UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 13-39 (01) |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| RICKEY NIKKI BEENE | MAGISTRATE JUDGE MARK L. HORNSBY |

### MEMORANDUM RULING

Before the Court is the only remaining issue in Defendant's Motion to Suppress, which is the admissibility of statements made by Defendant Rickey Nikki Beene [Record Document 21]. The Government opposed the motion. [Record Document 26]. The Court held an evidentiary hearing over the course of three days: June 13, June 14, and July 1, 2013. After further post-hearing briefing, the Court issued a Memorandum Ruling disposing of the issues surrounding the searches of Defendant's vehicle and residence. [Record Document 55]. Thereafter, the parties submitted additional briefing, limited to the only remaining issue, which is whether Defendant's statements should be suppressed in light of the Court's prior ruling. [*See* Record Documents 62 and 63].

For the reasons that follow, the Motion to Suppress [Record Document 21] is hereby **DENIED** insofar as Defendant seeks to suppress his recorded statements. The Court **DEFERS** ruling on the admissibility of the allegedly spontaneous, unrecorded statements, until trial.

## BACKGROUND FACTS[1]

On June 1, 2012, both Defendant and his wife, Shauntae Heard Beene (hereinafter "Ms. Heard"), were arrested outside of their residence by law enforcement officers with the Haynesville Police Department (hereinafter "HPD"). Two officers, Mills and Crooks, testified as having advised Defendant of his *Miranda* rights at the time of his arrest, on scene at his residence. Simultaneous with the Defendant's arrest, the officers conducted a vehicle search, which this Court has already upheld in its prior ruling. [*See* Record Document 55]. Inside the vehicle, the officers found drugs, a gun, and almost one thousand dollars in cash, all of which the Court has found to be admissible at trial. The officers then searched the house, finding more drugs and a digital scale; however, the Court previously ruled that this search and the related seizures is inadmissible as the Government failed to prove that the search was based on valid consent by Ms. Heard.

According to Claiborne Parish Detective Adrian Malone's testimony, Defendant was taken straight from his residence to the Haynesville police station, while Police Chief Anthony Smith and Detective Malone, among other officers, took Ms. Heard to an area near a cemetery to search for more evidence. After completing that additional search, Detective Malone returned to the police station, where he ultimately was responsible for taking a recorded statement from Defendant. Although Malone himself never claimed to have advised Defendant of his rights, he testified that Officer Rickey

---

[1] The facts were set out in large part in this Court's prior ruling and do not bear full repetition and/or record references here. [See Record Document 55]. However, for purposes of this ruling, the Court will elaborate only on those facts relevant to this narrow issue.

Goode so advised Defendant at the station.[2] The officers then completed an "advice of rights form," before taking the above-mentioned recorded statement. HPD Officer Danny Mills, who was involved in Defendant's arrest and subsequent vehicle search, also testified that he advised Defendant of his *Miranda* rights again at the station and obtained Defendant's signature to confirm that Defendant understood his rights.[3]

When Defendant first arrived at the police station, he was placed on a bench near the booking desk, where he apparently made unsolicited statements to no one in particular.[4][5] Later, Defendant was transferred to the patrol office and once again handcuffed to a bench.[6] Upon Detective Malone's return to the station, for the stated purpose of transferring evidence and recording Defendant's statement,[7] he entered the patrol office, with a recording device, and proceeded to question Defendant.[8] For purposes of this ruling, the Court has included a detailed summary of the recorded statement.

---

[2] Record Document 41, p. 76, lines 5-11.

[3] Record Document 40, p. 58, lines 6-17 and pp. 55-57 (This form is contained in Officer Mills' report, which was admitted at the suppression hearing as part of Government Exhibit 2).

[4] Record Document 41, p. 64, lines 11-23; p. 70, lines 10-12 (Detective Malone testified that Officers Goode and Mills were also present off and on during the making of these allegedly spontaneous statements); and p. 76, lines 18-24.

[5] The Government's understanding was that the only statements at issue in Defendant's motion to suppress were those made during the recorded interview, taken by Detective Malone at the Haynesville police station. However, the Government does intend to offer at trial what it deems to be post-*Miranda*, spontaneous statements, made by the Defendant at the station, prior to any questioning by law enforcement. *See* Record Document 41, pp. 64-69.

[6] Record Document 41, p. 60, lines 8-13 and p. 74, lines 17-25.

[7] *Id.*, p. 59, lines 16-20.

[8] The disc containing the recorded statement was admitted as Government Exhibit 5.

At the outset of the recording, Detective Malone prefaced the interview by stating: "We're gonna (sic) be talking to [Defendant] about the reason why he possessed that firearm, try to get a statement from him, and see if he'd be willing to halfway cooperate with the investigation."[9] Thereafter, Malone apparently entered the patrol room, where Officer Goode was in the process of advising Defendant of his *Miranda* rights and apparently obtaining his signature on the "advice of rights" form.[10] Malone initiated his interrogation by claiming that Defendant had already told him why he had the firearm in question.[11] Malone then advised Defendant that he intended to question the people in the neighborhood near the Mill Street Apartment Complex, who claimed to have seen Defendant brandishing a firearm earlier on June 1, 2012.[12]

Defendant then attempted to explain the events that led up to him retrieving the firearm that he ultimately possessed on June 1, 2012. He explained that, on the day before he was arrested, he came in contact with another man, whom he later identified by both name and his involvement in drug activity. This confrontation allegedly prompted Defendant to carry a firearm the next day, which was June 1, 2012. Defendant clarified that he does not keep a firearm in his house but rather "had the gun stashed in the woods," at his disposal.[13] He then stressed the fact that he did not

---

[9] Government Exhibit 5, time 00:53-01:08.

[10] *Id.*, time 02:06-03:23.

[11] *Id.*, time 03:32-03:37.

[12] *Id.*, time 03:40-03:49.

[13] *Id.*, time 05:38-05:52; *see also id.* at time 08:43-08:58 ("I had one stashed in the woods... I been had that gun stashed in the woods. I bought it off the street, but I didn't deal with it though, because I know, that's automatic for me...").

instigate any confrontation between the other man and himself. Nonetheless, the two came into contact when the other man, whom Defendant has historically known to carry a gun, "rode up on him;" although, Defendant admitted to not having seen a gun in the other man's possession on this particular day.[14] Defendant claimed that he doesn't "deal with guns," that he only had it "for [his] protection," and that he never brandished it to, or in front of, anyone on June 1, 2012.[15]

## CONTENTIONS OF THE PARTIES

Defendant argues that his post-arrest statements should be suppressed and excluded as "fruit of the poisonous tree." Here, the poisonous tree would be the search of Defendant's residence, which the Court previously found to be inadmissible. Based on the Court's prior ruling, the Defendant has moved to suppress all post-arrest statements, including both the allegedly spontaneous statements made during the booking process as well as those made during the recorded custodial interrogation. In opposition, the Government argues that the statements, both recorded and unrecorded, should not be excluded, because they were the direct result of a series of events that transpired before the residence was searched.

## LAW & ANALYSIS

It is undisputed that the Government bears the burden of proof, by a preponderance of the evidence, on the instant motion to suppress.[16] *United States v.*

---

[14] *Id.*, time 06:17-06:32.

[15] *Id.*, time 07:15-08:05.

[16] Record Document 40, p. 11, lines 1-5.

*Hurtado*, 905 F.2d 74, 76 (5th Cir. 1990) (collecting cases) (Government has burden at suppression hearings to prove, by a preponderance of the evidence, the voluntariness of a consent to a warrantless search, the voluntariness of a confession, the inevitable discovery of evidence, or the waiver of *Miranda* rights).

The "exclusionary rule is designed to deter police misconduct[.]" *United States v. Leon*, 468 U.S. 897, 916 (1984). It generally "prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the 'fruit of the poisonous tree.' " *United States v. Singh*, 261 F.3d 530, 535 (5th Cir. 2001). Evidence should not, however, be excluded merely because it would not have been discovered "but-for" a constitutional violation. *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). "Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id*. at 488. (internal quotation marks and citation omitted). In other words, a court must suppress all evidence derived from the exploitation of an illegal search or seizure, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation. *United States v. Jones*, 234 F.3d 234, 243-44 (5th Cir. 2000) (internal citation omitted).

Both verbal statements and physical evidence are subject to the exclusionary rule. *Wong Sun*, 371 U.S. at 485-86. Although the Supreme Court has stated that *Miranda* warnings are an important factor to consider in determining whether any given

statement is voluntary, they are not the only factor. *Brown v. Illinois*, 422 U.S. 590, 603 (1975). When the evidence in question is a confession, the relevant factors for deciding whether the confession was a product of free will include: "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances ... and, particularly, the purpose and flagrancy of the official misconduct ...." *Id.* at 603–04 (citations omitted).

In determining admissibility, a court should consider "the degree of free will exercised by the defendant and balance[] the cost of 'exclusion [that] would perpetually disable a witness from testifying about the relevant and material facts' against the need to deter unconstitutional conduct in the future." *United States v. Tovar*, 719 F.3d 376, 387 (5th Cir. 2013) (quoting *United States v. Ceccolini*, 435 U.S. 268, 276 (1978)). As in *Tovar*, Defendant Beene does not meaningfully argue that his statements were involuntary; therefore, the question is whether Beene's statements were the product of free will under *Wong Sun* and *Brown*. Defendant's recorded statement was given approximately four hours after he was lawfully arrested, having been in constant police custody during that time. In the intervening hours, Defendant's vehicle was lawfully searched, resulting in an admissible seizure that is directly tied to the recorded interrogation. Additionally, Defendant's residence was unlawfully searched, based on alleged consent obtained from Ms. Heard, resulting in a seizure that was never referenced in the recorded interrogation and has ultimately been suppressed by prior ruling of this Court. Defendant was also advised of his *Miranda* rights multiple times, by several different officers, both at the scene of his initial arrest as well as at

the police station, prior to formal interrogation. Although this Court has previously found that the officers' conduct relevant to the unlawful search of Defendant's residence was most certainly flagrant and egregious, the Court likewise finds that such conduct did not taint Defendant's later, recorded statements.

Here, Defendant Beene was initially arrested for both resisting an officer and brandishing a firearm. The lawful search of Defendant's vehicle resulted in the seizure of a firearm, drugs, and cash, while the unlawful search of Defendant's residence resulted in the seizure of a significantly larger quantity of drugs, all of which has now been suppressed. The entire recorded statement, which Defendant seeks to suppress, focuses on the firearm lawfully seized from the vehicle and inquires into Defendant's stated reasons for possessing said firearm on the day in question. At no time during the recorded interrogation does Detective Malone mention the search of the residence, the drugs seized therein, or any possible connection between the larger quantity of drugs and Defendant's possession of the firearm. As such, there is absolutely no evidence that Detective Malone exploited the illegal residential search and seizure to obtain Defendant's later, post-*Miranda* confession to possession of a firearm.

Accordingly, the Motion to Suppress [Record Document 21] is hereby **DENIED** insofar as it seeks to suppress the recorded confession. Regarding the admissibility of the allegedly spontaneous statements made at or near the booking desk during the first hour that Defendant was held at the Haynesville police station, the Court **DEFERS** ruling on the admissibility of those statements until trial.[17]

---

[17] *See* Record Document 41, pp. 64-70 (This issue was only cursorily discussed at the suppression hearing).

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 5th day of November, 2013.

_____
Elizabeth Erny Foote
United States District Judge