U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 2 6 2016

TONY R. MOORE, CLERK
BY_____
            DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 13-39 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| RICKEY NIKKI BEENE | MAGISTRATE JUDGE MARK L. HORNSBY |

## MEMORANDUM RULING

Pursuant to a remand from the Fifth Circuit Court of Appeal, Defendant Rickey Nikki Beene's ("Beene") motion to suppress has returned to this Court for factual findings on a discrete issue: whether exigent circumstances existed which, along with probable cause, permitted the warrantless search of the vehicle Beene was driving at the time of his arrest. For the reasons that follow, the motion to suppress [Record Document 21] is **GRANTED IN PART** and **DENIED IN PART**. The Court finds that exigent circumstances did, indeed, exist. Beene's motion to suppress the evidence seized from the vehicle is, therefore, **DENIED**. However, consistent with the Court's prior rulings in this matter [see Record Document 55], the evidence seized from the Beene residence is still deemed inadmissible. That legal conclusion is not disturbed by this opinion, and therefore Beene's motion to suppress the evidence seized from the residence remains **GRANTED**. Because the Court concludes that the search of the vehicle was lawful, the Court's prior ruling with respect to the admissibility of Beene's post-arrest statements [Record Document 66] is undisturbed.

-1-

## BACKGROUND FACTS

This case arises out of events that transpired on June 1, 2012, in Haynesville, Louisiana. Shortly after 6:00 p.m. that day, Claiborne Parish Sheriff ("CPS") deputies and Haynesville Police Department ("HPD") officers responded to a dispatch call stating that a subject had brandished a gun near the Mill Street Apartment Complex. The subject was identified by both dispatch and law enforcement officers as Beene. Soon after the dispatch report, Beene left the apartment complex in a grey or silver Honda Accord and drove to his residence, where he was immediately confronted by law enforcement officers.

The first officer on the scene was Danny Mills ("Officer Mills"), who arrived at Beene's residence at almost the exact moment Beene pulled into his driveway.[1] Officer Mills and Beene immediately exited their respective vehicles. However, Beene refused several commands to stop and place his hands on the trunk, prompting Officer Mills to pull his Taser. Without having to deploy the Taser, Officer Mills was finally able to convince Beene to drop to the ground after which Beene was placed under arrest. Officer Mills believed he had probable cause to arrest Beene based on the dispatch call reporting Beene brandished a firearm, as well as Beene's refusal to obey Officer Mills's commands.

---

[1] Following the dispatch call, Officer Mills learned that Beene had departed the apartment complex. Officer Mills drove straight to Beene's residence in an attempt to locate him. Officer Mills and Beene arrived at Beene's residence at almost the exact same time. Their respective vehicles were facing each other in the street before Beene pulled into his driveway. Officer Mills then pulled in behind him, blocking Beene's car.

HPD Officers Trent Crook ("Officer Crook") and Rickey Goode ("Officer Goode") arrived on the scene next.  Officer Goode was with the canine unit and handled the drug dog.  Officer Crook handcuffed Beene and placed him in a patrol unit parked on the scene. Both Officers Mills and Crook testified as having advised Beene of his <u>Miranda</u> rights at the scene of his arrest.

During all of this time, Beene's wife, Shauntae Heard Beene (referred to at the suppression hearing as "Heard"), was sitting in another car parked on the front lawn of the residence.  At some point during Beene's arrest, Heard emerged from her vehicle and ran toward the area where Beene was being held.  By all accounts, Heard was upset by the scene.  Although she heeded commands to stay back, Heard continued to yell at the officers.

Upon Heard's claim that the Honda Accord driven by Beene actually belonged to her and that she did not consent to a search for the gun, Officer Goode deployed the drug-sniffing dog.  The dog alerted on at least four different areas of the car:  the driver's side door; the front left bumper near the tire; the trunk; and the passenger doors.  The officers then searched the vehicle and found marijuana, crack cocaine, a loaded .380 caliber handgun, and a wallet containing almost one thousand dollars in cash.

The Court's prior suppression ruling discusses in detail the events that followed, which will only be summarized here.  <u>See</u> Record Document 55.  While Officers Mills and Goode were conducting the vehicle search, Heard was accompanied by Chief Anthony Smith ("Chief Smith") and Officer Crook.  At one point, Heard became somewhat hysterical and apparently fainted, necessitating the arrival of emergency medical personnel.

However, she refused medical treatment and was determined to be fine. Chief Smith testified at the hearing that he obtained Heard's written consent to search her house, during which various drugs and a digital scale were found. The Court, however, found Chief Smith's testimony to be incredible. Consequently, as discussed more extensively in the prior ruling, the Court held that Heard did not consent to the search of her house.

Ultimately, Heard was arrested for resisting an officer's orders, and she and Beene were transported separately to the police station in Haynesville. There, officers again provided Beene with his <u>Miranda</u> warnings. While at the police station, Beene made two sets of inculpatory statements: (1) apparently unsolicited statements uttered at or near the booking desk and (2) a recorded statement during a discussion with Detective Adrian Malone.

Beene was subsequently charged in a six-count indictment with one count of possession of a firearm by a convicted felon; three counts of possession with intent to distribute schedule II controlled substances; one count of possession with intent to distribute a schedule I controlled substance; and one count of possession of a firearm in relation to a drug-trafficking crime. He moved to suppress all of the evidence seized from both his home and the vehicle, as well as any statements he made to the officers. Record Document 21. Following a lengthy evidentiary hearing on Beene's motion to suppress, this Court issued a series of orders, memorialized in two written rulings. First, the Court addressed the physical evidence discovered during the searches. It held the evidence seized from the car was admissible, finding that (1) the search of the vehicle was valid as the result of a lawful traffic stop and search incident to arrest and (2) the use of the drug-

sniffing dog was permissible because the driveway was not part of the curtilage of the residence.  See Record Document 55.  Conversely, the Court found that the evidence seized from the residence was inadmissible, as that search did not comport with Fourth Amendment requirements.   See id.   The Court's second ruling addressed Beene's statements to officers and determined that Beene's post-arrest recorded statement was admissible, but deferred a ruling on the admissibility of Beene's spontaneous statements made at the booking desk at the police station.  See Record Document 66.

Beene requested the Court reconsider the admissibility of the evidence seized from the car.  Record Document 57.  There, he argued for the first time that the automobile exception to the warrant requirement did not apply and thus the search was unlawful.  The Government's response thereto did not address this new argument at all.   Record Document 59.  This Court denied Beene's motion to reconsider.  Record Document 68. Thereafter, Beene entered a conditional plea to the felon-in-possession count of the indictment, thereby reserving his right to challenge the Court's unfavorable ruling on the motion to suppress.  Record Documents 77 & 79.

On appeal, the Fifth Circuit held that the search of the vehicle was not a lawful search incident to arrest because Beene's vehicle was unlikely to contain evidence related to the crime of arrest-- resisting an officer.[2]  The Fifth Circuit agreed with this Court that

---

[2] At the district court level, the Court and the parties framed Beene's arrest as for both resisting arrest and brandishing a firearm.  At times, the issue was referred to simply as Officer Mills believing he had probable cause to arrest Beene for brandishing a firearm.  On appeal, the Government's brief again represented that Beene was arrested, in part, for brandishing a weapon.  The Fifth Circuit itself noted that "Officer Mills also believed he had probable cause to arrest Beene based on the report that Beene had

Beene's driveway was not part of the curtilage, and therefore the police acted lawfully in bringing the drug-dog onto the property to sniff the vehicle.  The court noted that the automobile exception, not fully briefed by the parties at the district court level, may have justified the search of Beene's vehicle but because the issue was injected after this Court's denial of the motion to suppress, there were no factual findings made to support such a finding.  Finally, the court held that the admissibility of Beene's post-arrest statements was contingent upon this Court determining anew the lawfulness of the search of Beene's vehicle.

## **LAW AND ANALYSIS**

I.    Search of the Honda.

The burden is on the Government to prove the existence of exigent circumstances. See United States v. Rico, 51 F.3d 495, 501 (5th Cir. 1995).  In general, a warrantless search will be deemed unreasonable.  See United States v. Reed, 26 F.3d 523, 528 (5th Cir. 1994).  That precept, however, is subject to various qualifications, one of which is the automobile exception.  That exception allows law enforcement officers to search a vehicle

---

brandished a firearm . . . ." United States v. Beene, 818 F.3d 157, 160 (5th Cir. 2016). This Court's prior holding was that Beene's arrest supported the search incident to arrest exception, in that officers were searching Beene's vehicle for evidence relating to the offense for which he was being arrested-- brandishing a firearm.  Disagreeing, however, the Fifth Circuit stated "[i]n this case, the crime of arrest was resisting arrest. Beene's vehicle would not contain evidence of that crime." Id. at 161-62.  This fact-- that Beene was arrested for resisting arrest rather than brandishing a firearm--  was relied upon by the Fifth Circuit, yet it was never clarified on the record before the district court.  While there is some indication in the record that brandishing a firearm may not have actually resulted in Beene's arrest (the Claiborne Parish Sheriff's Office Report of Investigation does not list that offense as one of the crimes Beene committed that day), that report is seemingly inconsistent with the witness testimony.

without a warrant when they have probable cause to believe the vehicle contains contraband. See Maryland v. Dyson, 527 U.S. 465, 467 (1999). The Supreme Court has explained that the automobile exception carries no separate exigency requirement. See id. Instead, the mobility of the vehicle itself supplies the exigency. See United States v. Castelo, 415 F.3d 407, 412 (5th Cir. 2005).

However, when the vehicle is parked in a defendant's residential driveway, as opposed to being driven on public roads or parked in a location in which the defendant has no possessory interest, Fifth Circuit precedent requires more. See United States v. Fields, 456 F.3d 519, 525 (5th Cir. 2006); United States v. Sinisterra, 77 F.3d 101 (5th Cir. 1996). That is, probable cause, in addition to exigent circumstances, are required to justify a warrantless search of a vehicle that is parked in a defendant's residential driveway. See Fields, 456 F.3d at 525; see also United States v. Orona, 166 F. App'x 765, 766 (5th Cir. 2006) ("exigent circumstances are also required to justify a warrantless search of a vehicle when the vehicle is parked in the driveway of a residence.").

In the instant case, the Fifth Circuit held that Goode's drug-dog supplied the necessary probable cause. Consequently, the issue of probable cause is not before the Court. Thus, the question presented is whether exigent circumstances also existed. "Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may justify a warrantless entry." United States v. Blount, 123 F.3d 831, 837 (5th Cir. 1997) (en banc). The Fifth Circuit

> has created a non-exhaustive five-factor list to determine whether exigent circumstances exist: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband

-7-

is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) the information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of it and to escape are characteristics in which those trafficking in contraband generally engage.

United States v. Mata, 517 F.3d 279, 287 (5th Cir. 2008).  In the context of automobile searches, the Fifth Circuit has also noted that the following factors may present exigent circumstances:  "(1) the automobile is moving or easily moveable; (2) opportunities for the destruction of the evidence exist; or (3) the abandonment of the automobile in a public area."  Reed, 26 F.3d at 528 n.5.

Viewing the facts of this case, this Court easily finds that exigent circumstances existed to justify the search of the vehicle Beene was driving.  The record evidence establishes that Officer Mills was in hot pursuit of Beene following the report that Beene brandished a firearm in public.  In fact, after hearing the dispatch call, Officer Mills attempted to confront Beene at the apartment complex but Beene had already departed that location.  Officer Mills headed directly to Beene's residence where he observed Beene driving the Honda down the street in the direction of his driveway.  Beene pulled into the driveway mere moments before Officer Mills could effect a traffic stop in the street.  Simply put, Beene was able to turn into his driveway quickly enough that he preempted Officer Mills's intended traffic stop.  Thus, when Officer Mills and the other officers arrived at Beene's residence, "the trail was hot."  Reed, 26 F.3d at 529-30 ("The officers also missed no opportunity to obtain a valid warrant during a lengthy investigation—they did not know where the car was, nor that it contained the money, until they completed their tracking

-8-

upon arrival at the house.  The pursuit began shortly after the robbery, and continued until the signal was traced. When the officers arrived at Reed's house, the trail was hot.").

Furthermore, it is highly improbable that Officer Mills or others could have obtained a warrant before arriving at Beene's residence because they did not know where Beene was until the very moment when Officer Mills encountered him in the street outside of the residence.  Officer Mills's pursuit began immediately upon the dispatch call and continued up until the moment he located Beene in the street. See Carlton v. Estelle, 480 F.2d 759, 762 (5th Cir. 1973) (noting that officers "were not certain of the whereabouts of Carlton; they did not know the location of the car until they arrived at the Carlton residence  . . . and when they finally arrived at the house, the trail was hot."); see also United States v. Cisneros-Mireles, 739 F.2d 1000, 1003 (5th Cir. 1984) ("The agents could hardly have been expected to have obtained a search warrant for the Buick prior to their arriving at the parking lot, since at that time, they had no knowledge of the Buick or that marihuana would be transferred to it.").   Clearly then, Officer Mills did not miss any genuine opportunity to obtain a warrant before encountering Beene.  See Carlton, 480 F.2d at 763 (finding exigent circumstances in part because "[a]t the point of arrest they had missed no genuine opportunity to obtain a valid warrant to search the car, since it would have been impracticable for them to interrupt their search for the rapist in order to secure warrants before proceeding to the house.").

This Court also finds significant the potential danger that existed for officers and third parties at the scene, as well as any officer who may have been left behind to guard the car while a warrant was obtained.  Dispatch reported that Beene had brandished a

firearm.  This information plainly escalated the urgency of the situation and increased the potential for danger or violence.[3] [4]  It is beyond dispute that firearms are dangerous. When they are present, officers must investigate promptly, yet warily and with extreme caution, to ensure the safety of themselves and others nearby.  Beene was reported to have pointed a gun at people at the apartment complex.  Because of the short amount of time that had elapsed, the officers' belief that the gun was still inside the Honda was reasonable and favors a finding of exigency.

The Court finds there also existed the possibility that evidence could have been removed in the absence of an immediate search.  Here, officers were faced with the knowledge that the Honda belonged to Heard, who was not under arrest at the time of the search.[5]  Plainly, Heard was "in a position to exercise dominion over the car for innocent reasons or otherwise." Carlton, 480 F.2d at 763.  Thus, at the time they decided to search,

---

[3] The Court is unpersuaded by Beene's argument that no officer specifically testified that he feared for his safety.

[4] Hypothetical scenarios are often employed to gauge the urgency faced by officers in such circumstances.  See e.g., United States v. Gaultney, 581 F.2d 1137, 1143 (5th Cir. 1978) (theorizing that exigent circumstances existed because if officers had allowed defendant to enter his truck to retrieve a box of cocaine, the defendant "could have spotted the other agents and suspected that his project had gone sour. He could then have fled the scene, forcing the officers to give chase or to permit him to escape, along with the contraband . . . .  Had the officers waited until a chase actually took place the subject might nevertheless have escaped . . . .").

[5] Rather, Heard was talking to Chief Smith and Officer Crook.  She was arrested after the car was searched.

-10-

officers faced the very real possibility that Heard or other unknown persons could have gained access to the car to remove evidence if the officers left to secure a warrant. [6]

The Court finds support for this conclusion in the Fifth Circuit's opinion in Reed. There, it found exigency despite the fact that the defendant and his wife were both handcuffed and in custody and the police had the keys to the car.  Reed, 26 F.3d at 530. Reed dismissed the argument that exigency disappeared once the occupants of the house were arrested and the car keys were in the possession of the police because the officers "could not know whether that was the only set of keys to the car . . . ." Id. Declining to agree that the police could have simply posted a guard to prevent third party access to the vehicle until a warrant was secured, the court instructed that "[t]o leave the vehicle or post some undefined guards while securing a warrant with the valuable evidence inside would be risking the loss of that evidence and potential injury to themselves and the neighbors." Id. at 530.  The court also emphasized a defendant's diminished expectation of privacy in a vehicle.  Id.   Finally, the Fifth Circuit dispelled the contention that the police could have seized and secured the car rather than leaving it unattended, because "if a warrantless seizure is permissible, a warrantless search is permissible as well."   Id. at 530 (citing

_____

[6] The Court notes that in Carlton, the Fifth Circuit was also faced with the hypothetical possibility that third parties could have intervened to destroy potential evidence possibly located in the defendant's vehicle.  The court explained, "this record does show that this car . . . was relatively close to persons who knew of it, knew of [the defendant's] trouble, and had an interest in him.  The record does not suggest what these persons or any other person would have done if the officials had not exercised dominion over the car immediately upon arrest." Carlton, 480 F.2d at 763. Nonetheless, the court had no qualms concluding that there were "exigencies created by the potential intervention of third parties." Id.

-11-

Carlton, 480 F.2d at 762);  see also United States v. McLaughlin, 578 F.2d 1180, 1183 (5th Cir. 1978) (finding exigency based on possibility that driver of vehicle and passenger might return to the vehicle to remove or destroy contraband and noting that "[a]ny officers standing watch over the car while a warrant was being obtained would have been particularly vulnerable given the time of night and the suspects' ability to use the Garcia house as cover.").  The Court finds Reed's reasoning equally applicable and persuasive here.

In the instant case, the facts supporting exigency are in direct contrast to those notably absent in Coolidge v. New Hampshire, 403 U.S. 443, 460-62 (1971).  There, a plurality of Supreme Court justices invalidated the search of a vehicle that had been parked in the defendant's driveway, finding that there were no exigent circumstances to justify a search of the vehicle under the automobile exception.  In that case, the investigation into the murder of a teenage girl had been ongoing for two weeks and, during that time, the police had known that the defendant's car was likely involved in the crime.  Id. at 460.  The opportunity to search the car was "hardly fleeting."  Id.  On the night of the defendant's arrest, the vehicle had not been used for any illegal purpose.  Id.  The defendant knew he was a suspect in the murder and yet had demonstrated no intent to flee.  Id.  During those two weeks, the defendant had the opportunity to destroy any incriminating evidence.  Id. The items that the police desired to search for in the car "were neither stolen nor contraband nor dangerous."  Id.  Upon the arrest of the defendant, the police removed his wife from the house and guarded both the house and the car through the night to secure it from any third persons.  Id. at 460-61.  Finally, the vehicle was not searched until two

-12-

days later. Id. Given all of this, the Court determined that exigency, if it had existed, had vanished by the time of the search; thus, the automobile exception did not apply. Id. at 461-62.

In contrast to Coolidge, in this case, the Court is faced with urgency, with prompt action and hot pursuit by law enforcement, by the potential for removal and/or destruction of evidence, by the potential for danger because of the likely presence of a firearm, and by Beene's use of the vehicle to flee the scene of the suspected crime. For all of these reasons, the Court finds the officers were presented with exigent circumstances that, coupled with the probable cause of the drug-dog alert, justified the search of the Honda Beene was driving. Accordingly, the Court concludes that the search was lawful, and the evidence seized therein is admissible against Beene.

II.   Beene's Post-Arrest Statements.

On appeal, the Fifth Circuit left open the question of whether Beene's post-arrest statements are admissible against him. The admissibility of his statements is an inquiry contingent upon, in part, this Court deciding whether the search of the vehicle was lawful. Once again, it is the Government's burden to prove by a preponderance of the evidence the voluntariness of a confession and the waiver of Miranda rights. See United States v. Hurtado, 905 F.2d 74, 76 (5th Cir. 1990) (collecting cases). Because this Court finds that Beene's vehicle was lawfully searched, it incorporates, relies upon, and reinstates its prior analyses and holdings with respect to the admissibility of Beene's post-arrest statements. See Record Document 66. In short, the recorded confession is admissible, and Beene's motion to suppress those statements remains denied. However, consistent with the Court's

-13-

prior ruling, a determination of the admissibility of the allegedly spontaneous statements made at or near the booking desk during the first hour Beene was at the Haynesville police station is deferred until trial.

## CONCLUSION

For the foregoing reasons, the Court finds that exigent circumstances existed which, coupled with the probable cause supplied by the drug-dog alert, justified the search of the vehicle Beene was driving. Accordingly, **IT IS ORDERED** that Beene's motion to suppress [Record Document 21] is **GRANTED IN PART** and **DENIED IN PART**. With respect to the evidence seized from the house, the motion is **GRANTED**.[7] With respect to the evidence seized from the vehicle, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Court's prior ruling as to the admissibility of Beene's statements [Record Document 66] is undisturbed and in full effect. That is, Beene's recorded statement is admissible, while the Court defers until trial a ruling on the admissibility of the allegedly spontaneous statement.

This matter is hereby **REFERRED** to Magistrate Judge Hornsby for further proceedings.

**THUS DONE AND SIGNED** this 26th day of September, 2016.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT COURT

---

[7] Consistent with the Court's prior rulings in this matter, the evidence seized from the Beene residence is still deemed inadmissible. That legal conclusion is not disturbed by this opinion.